IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION


CARL F. COOK                                                    PETITIONER


vs.                    Civil Case No. 5:06CV00025 HLJ


LARRY NORRIS, Director,
Arkansas Department of Correction                              RESPONDENT

### PROPOSED FINDINGS AND RECOMMENDATIONS
### INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge William R. Wilson, Jr.  Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at

the same time that you file your written objections, include the following:

1.   Why the record made before the Magistrate Judge is inadequate.

2.   Why the evidence proffered at the hearing before the District Judge (if such a  hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.   The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## DISPOSITION

Now before the court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 by Carl F. Cook, an inmate of the Arkansas Department of Correction.  Petitioner was convicted by a jury on January 20, 2000, of delivery of methamphetamine, conspiracy to deliver methamphetamine and theft of property, and he received an aggregate sentence of thirty-five years imprisonment.

On direct appeal, the Arkansas Court of Appeals set forth the following facts from the record:

> On June 25, 1999, Tom Alexander (a confidential informant) met with investigators of the Fifth Judicial District Drug Task Force (DTF) to arrange a controlled purchase of methamphetamine from appellant, Carl "Bubba" Cook. On July 12, 1999, Alexander arranged to purchase one ounce of methamphetamine from Cook. Investigators with the DTF met with Alexander prior to the arranged purchase and installed a body wire, provided him with a tape recorder, and gave him $1,200 in "buy" money. At approximately 10:30 p.m. on July 12, Alexander entered the residence of Carl Cook and Sandra Burris on Atkins Bottom Road in Pope County, Arkansas. In an area outside of the appellants' home, Alexander gave Cook the $1,200 in exchange for one ounce of methamphetamine. The transaction was recorded on audio tape. Appellant Burris was inside the home during the "buy." She was monitoring a police scanner and communicated to Cook that she could hear Cook's conversation with Alexander on the scanner. Cook demanded that Alexander follow him to the house for questioning. While walking to the residence, Alexander discarded the body wire and tape recorder before being questioned by Cook. Once inside the residence, Cook ordered a strip search. When Alexander's shirt was removed, a piece of tape was discovered. Before Cook released him, Alexander was robbed, threatened, and kept against his will for approximately two hours.
>
> The following day, a search warrant was executed for the Cook residence for the body wire, recorder, and money. The tape recorder was recovered during the search. The following day, a van was stopped that had been seen at the Cook residence during prior surveillance of his property. The driver, David Kidd, was detained on an unrelated chancery court matter. During a routine inventory search of the van, the body wire that Alexander discarded on Cook's property was discovered.

Cook v. State 76 Ark.App. 447, 450 (2002). Petitioner raised the following claims in his direct appeal brief:

> 1. He was denied the effective assistance of counsel because of the conflict of interest created by counsel's

representation of Petitioner and his co-defendant Sandra Burris;

2.   The search warrant for his home violated the Fourth Amendment;

3.   The inventory search of the van was illegal and the evidence seized should be suppressed and

4.   At sentencing, the State introduced a conviction the Arkansas governor had pardoned.

Respondent's Exhibit A.   The state court affirmed his convictions on February 20, 2002, <u>Cook v. State</u>, 76 Ark. App. at 455.   On March 8, 2002, Petitioner filed a Petition for Review by the Arkansas Supreme Court, attachments to Amended Petition (DE # 18), and the State filed a response on March 12, 2002.   The Arkansas Supreme Court denied review on April 18, 2002, Amended Notice of Filing (DE #58), Attachment #2, and the Arkansas Court of Appeals entered its mandate on that date, Notice of Filing (DE #54, Attachment #1).

Petitioner filed a motion for post-conviction relief under Rule 37 of the Arkansas Rules of Criminal Procedure on June 7, 2002 (DE # 54, Attachment #2), which the trial court denied on February 5, 2003.   He appealed, raising the following issues:

1.   The trial court erred when it found Petitioner was not denied the effective assistance of counsel because of the conflict of interest created by counsel's representation of Petitioner and his co-defendant Sandra Burris;

2.   The trial court erred when it found counsel was not ineffective for failing to investigate whether one of Petitioner's convictions had been pardoned;

3.   The trial court erred when it found counsel was not ineffective for failing to impeach Tom Alexander through tape recorded conversations;

4.   The trial court erred when it found Petitioner was not denied due process of law when the State failed to disclose the evidence of a pardoned conviction and

5.   The trial court erred when it found counsel was not ineffective for failing to interview and present the testimony of four witnesses who were available and capable of testifying.

Respondent's Exhibit C.  The Arkansas Supreme Court affirmed, <u>Cook v. State of Arkansas</u>, 361 Ark. 91 (2005)(Respondent's Exhibit B), and entered its mandate on March 22, 2005 (DE #54, Attachment #3).

Petitioner signed his original § 2254 petition on February 1, 2006, and the petition was filed on February 7, 2006 (DE #2).  He raised the following grounds for relief:

1.   Trial counsel was ineffective in that he labored under a conflict of interest due to his joint representation of Petitioner and co-defendant Sandra Burris;

2.   Trial counsel was ineffective in that he failed to impeach the testimony of Thomas Alexander, a confidential informant, with a tape recording on which Alexander stated Petitioner did not sell him drugs, kidnap or rob him, and he failed to interview or call three defense witnesses (Freddie Petty, Duey Pace and Brian Embry), who were present during the July 12, 1999, incident, including the confidential informant Alexander, who would have testified the alleged crimes did not take place;

3.   Trial counsel was ineffective in that he failed to investigate and discover evidence that some of the prior convictions used to impeach him during the trial and enhance his sentence had been pardoned;

4.   The prosecution failed to disclose and knowingly withheld evidence that some of Petitioner's prior

convictions used to impeach him during trial and to enhance his sentence had been pardoned.

He filed an amended petition (DE # 18) on September 13, 2006, in which he raised the following additional issues:

5.    The prosecution deliberately withheld facts and evidence that Petitioner could have used during his suppression proceedings to show that prosecution evidence was fabricated by law enforcement, assisted by confidential informant Alexander, and obtained unlawfully;

6.    The prosecution violated Arkansas discovery rules and the fundamental requirements of <u>Brady v. Maryland</u>, <u>U.S. v. Bagley</u> and <u>Mapue v. Illinois</u> by failing to disclose factual, mitigating and impeaching evidence to the defense that shows the police obtained information that led to the search of Petitioner's vehicle and home from a confidential informant (Alexander), whom the police threatened with long prison sentences for him and his wife, who had been arrested with a large amount of methamphetamine, if they did not cooperate, and promised no charges against his wife and probation for Alexander if they did cooperate, which facts are only coming to light now;

7.    Trial counsel, appellate counsel and Rule 37 counsel were ineffective in that they

A.    failed to recognize, investigate and present to the trial court, the appellate court and the post-conviction court the fact that Agent Land, the FBI and Agent Jagger breached the confidentiality they promised Petitioner when Petitioner informed them Prosecutor Gibbons and Steve Brown and other law enforcement officers were operating an organized criminal enterprise controlling the drug trade in Pope County in violation of the RICO Act, by revealing Petitioner's confidential statements to Gibbons, Brown and the other officers, which led to the investigation of Petitioner and a vendetta that included arresting Petitioner's associates, hoping to cause one of them to work undercover for police, and multiple

6

searches of Petitioner's automobiles and home, which resulted in the seizure of evidence that led to his trial, conviction and imprisonment and

B. failed to challenge the sufficiency of two crime lab results that were reported erroneously and only in part, because both substances tested cannot physically produce methamphetamine in violation of A.C.A § 5-64-401, but can produce crank amphetamine in violation of A.C.A. § 5-64-1101, and A.C.A § 5-64-1102;

8. The prosecutor failed to establish each element of the crimes charged and thus failed to establish the court's jurisdiction to try Petitioner because he did not establish that the substances confiscated and tested could produce methamphetamine and trial counsel was ineffective for failing to challenge the sufficiency of the two crime lab reports and

9. The cumulative errors identified above rendered the result of his trial unreliable.

Respondent admits Petitioner is in his custody pursuant to these convictions and, for the purposes of this petition, he admits Petitioner has no non-futile state remedies available, but he denies Petitioner is entitled to relief.

I.

The court raised the question of timeliness <u>sua</u> <u>sponte</u> in this matter. The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) amended 28 U.S.C. § 2244(d), to provide as follows:

(d)(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –

(A) the date on which the judgment became
final by the conclusion of direct review or
the expiration of the time for seeking such
review;

(B) the date on which the impediment to filing
an application created by State action in
violation of the Constitution or laws of the
United States is removed, if the applicant was
prevented from filing by such State action;

(C) the date on which the constitutional right
asserted was initially recognized by the
Supreme Court, if the right has been newly
recognized by the Supreme Court and made
retroactively applicable to cases on
collateral review; or

(D) the date on which the factual predicate of
the claim or claims presented could have been
discovered through the exercise of due
diligence.

2.   The time during which a properly filed application
for State post-conviction or other collateral review with
respect to the pertinent judgment or claim is pending
shall not be counted toward any period of limitation
under this subsection.

After reviewing the relevant documents from the state court

proceedings, the court is convinced the original petition is

timely.  The relevant triggering date for the original petition is

the date the conviction became final by "the conclusion of direct

review or the expiration of the time for seeking such review,"

under § 2244(d)(1)(A).[1]  Direct review ordinarily includes review

by the United States Supreme Court, either through the completion

---

[1]   Although ground four's triggering date may be the date on
which the factual predicate of the claim could have been discovered
through the exercise of due diligence, there is no need to address
that here, since I find the original petition is timely.

or denial of certiorari, or the expiration of the time allotted for filing a petition for certiorari.  Supreme Court Rule 13.1; <u>Nichols v. Bowersox</u>, 172 F.3d 1068, 1072 (8th Cir. 1999) (<u>en</u> <u>banc</u>).  The last sentence in Rule 13.1 provides that a "petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review."

Since the Arkansas Supreme Court entered its order denying review of the Arkansas Court of Appeals' decision on April 18, 2002, Petitioner's convictions became final under § 2244(d)(1)(A) ninety days later on July 17, 2002.[2]  Petitioner filed his Rule 37 petition on June 7, 2002, tolling the running of the limitations period under § 2244(d)(2).  These periods overlapped and the limitations period did not begin running for him until the end of his Rule 37 proceedings when the Arkansas Supreme Court entered its mandate denying Rule 37 relief on March 22, 2005.  Petitioner signed his original § 2254 petition on February 1, 2006, and the original petition was actually filed on February 7, 2006, within the one-year limitations period.

---

[2]  Neither party mentioned Petitioner's filing a petition for review, and prior to the court's discovery of his petition among the documents he filed in this case, the court considered whether <u>Riddle v. Kemna</u>, 523 F.3d 850 (8th Cir. 2008), and <u>Ben-Yah v. Norris</u>, 570 F. Supp.2d 1086, 1094-95 (E.D. Ark. 2008), applied in determining the timeliness of the original petition.  The discovery of the petition for review moots that question.

II.

Respondent asserts that, even if the original petition is timely, the amended petition does not relate back to the original petition and is therefore untimely.  As the court found above, the limitations period started to run on March 22, 2005, when the Arkansas Supreme Court entered its mandate denying Rule 37 relief. The amended petition was not filed until September 13, 2006, well past the expiration of the limitations period.

The amendment of habeas corpus petitions is governed by the Federal Rules of Civil Procedure.  28 U.S.C. § 2242.  The relevant portion of Rule 15(c) of the Federal Rules of Civil Procedure provides as follows:

(c) Relation Back of Amendments.

> 1) When an Amendment Relates Back.  An amendment to a pleading relates back to the date of the original pleading when:
>
>> (A) the law that provides the applicable statute of limitations allows relation back;
>>
>> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading....

Federal Rules of Civil Procedure, Rule 15(c), as amended 2007.

In <u>Mayle v. Felix</u>, 545 U.S. 644 (2005), the Court found these provisions allow relation back of a claim first asserted in an amended petition, "[s]o long as the original and amended petitions

10

state claims that are tied to a common core of operative facts...."
Id. at 664.

III.

As set out above, Petitioner raised his first four grounds in
the original petition, and he raised grounds five through nine in
his amended petition.  In grounds five and six, he asserts the
prosecution deliberately submitted false evidence to obtain search
warrants for his house, car and truck, and withheld evidence that
would have been useful in his suppression proceeding and as
impeachment evidence at trial.  In his Reply (DE # 31, p. 9) to
Respondent's Response to his amended petition, Petitioner
characterizes his amended petition as containing an attack against
falsehoods in the search warrant affidavit, and refers to "withheld
documents" and "hidden interview tapes."  I find these allegations
are not tied to a "common core of operative facts" contained in any
of the claims raised in the original petition, and thus grounds
five and six do not relate back to the original petition.[3]

---

[3] In addition, even if I found grounds five and six related
back to the original petition and are timely, Stone v. Powell, 428
U.S. 465, 482 (1976), provides that "where the State has provided
an opportunity for full and fair litigation of a Fourth Amendment
claim, a state prisoner may not be granted federal habeas corpus
relief on the ground that evidence obtained in an unconstitutional
search or seizure was introduced at trial," unless a petitioner can
show he "was precluded from using that mechanism because of an
unconscionable breakdown in the underlying process." Chavez v.
Weber, 497 F.3d 797, 802 (8th Cir. 2007), quoting Willett v.
Lockhart, 37 F.3d 1265, 1271-72 (8th Cir. 1994)(en banc)(adopting

In ground seven, Petitioner's allegation that trial counsel, appellate counsel and post-conviction counsel were ineffective because they failed to present to the state courts the information that FBI agents revealed to county officials Petitioner's confidential statements to the FBI regarding county officials' wrongdoing, thus causing those officials to investigate Petitioner as part of a vendetta against him, and his allegation that counsel failed to challenge the lab reports concerning the substances tested are not similar in "time and type" to the claims of ineffective assistance of counsel in grounds one, two and three. See Mandacina v. U.S., 328 F.3d 995 (8th Cir. 2003). Grounds one, two and three consist of allegations regarding a conflict of interest because of counsel's joint representation, his alleged failure to impeach Alexander or interview three witnesses and his alleged failure to investigate the pardons of Petitioner's prior convictions. There is no "common core of operative facts" and the allegations in ground seven do not relate back to the original petition. Thus, the claims in ground seven are untimely.

Petitioner's sufficiency of the evidence argument in ground eight is similar to the ineffective assistance of counsel argument

---

test set forth in Capellan v. Riley, 975 F.2d 67, 71 (2nd Cir. 1992)) (quotation marks omitted and emphasis removed). Petitioner took advantage of the procedures for raising such challenges in the Arkansas courts, and this court may not address any argument that is merely a challenge to the outcome of those proceedings.

in ground 7(B), but it is not similar to, and it does not contain a "common core of operative facts" with, any of the claims raised in the original petition.  Thus, it does not relate back and it is untimely.

Ground nine is Petitioner's claim he is entitled to relief based on "cumulative error."  This theory most often arises in questions of ineffective assistance of counsel.  In <u>Hall v. Luebbers</u>, 296 F.3d 685, 692-23 (8th Cir. 2002), the court explained that, in this circuit, "a habeas petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test."  Petitioner appears to argue he should be granted relief because of the cumulative effect of all of his grounds for relief.  However, unless each of Petitioner's claims can stand on its own, he is not entitled to relief.  <u>Scott v. Jones</u>, 915 F.2d 1188, 1191 (8th Cir. 1990).  Thus, I find ground nine does not state a claim for habeas relief and, even if it were timely, it would not entitle Petitioner to relief.  Because grounds five, six, seven and eight do not relate back to the original petition, and because the amended petition was filed outside the one-year limitations period, I must find these claims are untimely, if the triggering date is the date Petitioner's conviction became

final.   I further find ground nine has no merit and must be dismissed.[4]


IV.

This does not end the matter, however, because the essence of Petitioner's arguments in grounds five and six is that the prosecutor withheld evidence valuable to the defense.   An alternative triggering date in 28 U.S.C. § 2244(d)(1)(D) for the limitations period is "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Petitioner contends the prosecutor withheld evidence the defense could have used during suppression proceedings to show law enforcement officers and Alexander fabricated evidence to obtain a no-knock search warrant, and all of this denied him a "fair and adequate opportunity to raise his Fourth Amendment" claims in state court, negating the effect of Stone v. Powell in this case and allowing this court to reach his Fourth Amendment claims.   Amended Petition (DE # 18), pp. 6, 94-6. He states he only found this evidence recently through the discovery process in Cook v. Gibbons, et. al, No. 4:04CV00073,

---

[4]     Respondent asserts the amended petition is actually a successive petition and should be dismissed because Petitioner did not receive permission from the Eighth Circuit Court of Appeals to proceed, as required by 28 U.S.C. § 2244(b)(3).  Respondent has not cited any authority for this assertion, and therefore it will not be considered.

which he filed to seek redress for damages to his property that occurred during searches that resulted in the charges under review in this case.   It appears Petitioner contends the following evidence was only recently discovered:

1.   A statement by Mrs. Jo Dean Van Dolah, Petitioner's grandmother-in-law, that Petitioner's wife gave her the "supposed" money the police had given Alexander to be used to buy drugs from Petitioner, and she instructed Mrs. Van Dolah to give the money to Petitioner's attorney to turn over to the prosecution.  Petitioner argues this statement would have supported his testimony that he did not steal any money from Alexander,  Amended Petition (DE # 18), p. 95, which apparently was at least part of the basis for the theft charge.   The statement, however, does not exclude the possibility that Petitioner committed the theft by taking the money from Alexander, and he later gave it to his wife to send to the prosecution.   In any event, the record of the suppression hearing contains a reference to Mrs. Van Dolah and the money at Vol. II, pp. 362-63, where the prosecutor and the judge discuss the admission of the money.  Also, Mrs. Van Dolah testified at trial that Petitioner brought the marked money to her house in a cigarette pack, and the money Sandra Burris gave her was for Burris' bond and it was not marked.  She denied she had told the prosecutor Burris had brought her the marked money, and she testified Petitioner had approached her prior to trial and had

tried to convince her to "change [her] mind and change those papers and what to say about the officers." She also testified Petitioner and Burris told her they were going to surrender the money when they surrendered themselves, but they were arrested before they could surrender. Record, V. 3, pp. 754-60. Thus, Petitioner knew the factual basis for this claim prior to trial, and in any event it is not clear what more such a statement would have added to the record.

2. An investigative report by David Hydens indicating that, "as of July 14, 1999, absolutely no drugs or evidence to sell or buy drugs was evidence a contradiction to what was later reported wire and monitor stuff to make drugs and (Cook's) knife collection (supposedly) used to harm the (C.I.) Machete who stated (Cook) used to kidnap and rob the (C.I) these items were seized during the 7-13-99 illegal search." Amended Petition (DE #18), p. 96. I find Petitioner's allegations are vague, conclusory and, somewhat nonsensical.

3. A written statement by Officer William Kelly that Petitioner sold Alexander 25.9 grams of methamphetamine, his testimony at the suppression hearing that a tape was made of the transaction, Alexander's sworn testimony that he was forced by police to go to Petitioner's house and to try to draw him into drug activity under threat of him and his wife going to prison because of methamphetamine he had sold to police, and conflicts between

what Kelly attested to in the affidavit and Alexander's testimony. Amended Petition (DE # 18), p. 96-7.

At page 133, Vol. II, the part of the record to which Petitioner directs the court in support of this section, Petitioner's counsel questions Officer Kelly during the suppression hearing about why there is a gap in a tape recording of a conversation in Petitioner's home.  Thus, the factual basis for a claim was available at the time of the suppression hearing.

Petitioner was also aware of Alexander's statements that he was forced to try to buy drugs from Petitioner.  In the Amended Petition, at page 32, Petitioner states he and his attorney had conversations with Alexander in which he admitted he had not purchased any drugs from Petitioner, that he lied to the police, and that he had agreed to set Petitioner up in exchange for the prosecutor's agreement not to pursue criminal charges against Alexander's wife and reduced criminal charges against Alexander, with the possibility of probation.  Petitioner states these conversations were taped and transcribed months before trial. Amended Petition (DE # 18, p. 50-51).  Thus, the factual basis for these allegations was available to Petitioner at that time.

4.  Petitioner's statement concerning his attempt to inform the F.B.I. that officers on the Pope County Drug Task Force organized and controlled the drug trade in that county, which allegedly the F.B.I. revealed to the Task Force, resulting in an

17

investigation into Petitioner's activities.  The Arkansas State Police obtained a search warrant for Petitioner's home and found hunting and sports guns.  As a result, Petitioner was arrested and charged with being a felon in possession of firearms.  The prosecutor began proceedings to take his farm and contacted federal authorities, who filed federal charges against Petitioner in the Western District of Arkansas.  At a bond hearing, the Magistrate Judge found Petitioner had received an "Executive Proclamation Pardon" by former Governor Bill Clinton and he dismissed all charges.  Petitioner had a co-defendant, but all charges were dismissed against him because all evidence against him was obtained through violation of a confidential communication to the F.B.I. Amended Petition (DE # 18), p. 97-100).  I find this information was within Petitioner's control and he knew the factual basis of any resulting claim when it occurred.

5.  No charges were ever filed against Alexander, and he and his wife received probation for trafficking over one half pound of methamphetamine.  Later, one quarter of those drugs disappeared from the evidence lock-up, which was then controlled by Officer Kelly.  Petitioner states that, after the Director of the Drug Task Force was fired and convicted of stealing drugs, money and guns from the evidence lock-up, Officer Kelly and another officer resigned because of the disappearance of drug money and other properties.  Amended Petition (DE # 18), pp. 101-02.  I find most

of this information would have been a matter of public record, but Petitioner does not specify the dates of the occurrences and, thus, he has not shown he is entitled to a later triggering date.[5]

I conclude Petitioner has not shown the prosecutor withheld any information from him, the absence of which would have interfered with his opportunity to present his Fourth Amendment claims in state court. I further conclude Petitioner has not shown he is entitled to a more recent triggering date for the running of the limitations period under § 2244(d)(1)(D) for grounds five and six, because he has not shown, as he alleged, that he did not have access to the information until he completed discovery in his related civil case. Thus, I find, grounds five and six are untimely. Based on these findings, Petitioner has not shown he is entitled to equitable tolling.[6] Thus, the court will not consider

---

[5] Petitioner refers to documents in the appendices attached to his Amended Petition, including reports and separate files, but he has not specifically pointed to any document supporting his contention that the prosecutor withheld exculpatory evidence from the defense. Instead he alludes to documents obtained in discovery in another case, and presents Appendix A and Appendix B, consisting of hundreds of pages of discovery responses, affidavits, statements, investigators' notes, interviews, photographs and appeal briefs and other appeal documents. The court cannot sift through these documents to make Petitioner's arguments for him.

[6] A court may apply equitable tolling to a limitations period where a petitioner has established "two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). "[E]quitable tolling is appropriate only in rare cases," Von Eye v. U.S., 92 F.3d 681, 684 (8th Cir. 1996), "when the 'principles of equity would make [the] rigid application [of a limitation period] unfair.'" Miller v. New Jersey State Dep't. Of Corrections, 145 F.3d 616, 618 (3rd Cir. 1998). The court

grounds five, six, seven, eight or nine, but it will consider the four grounds raised in the original petition.

V.

In ground one, Petitioner contends trial counsel labored under a conflict of interest due to his joint representation of Petitioner and co-defendant Sandra Burris.  During a hearing on a motion to sever, the following exchange occurred, as set forth in Petitioner's brief in support of his petition, at DE #3, pp. 15-18:

> BY MR. FINLEY: We would like - we have several motions pending, Your Honor, one of which is for a severance in this case. We want to go ahead and ask about that. We - she is going to want to testify in this case and there's not going to be any question in my mind that she would testify and there's no question that that would call to the attention of the jury the fact that he's not testifying.
>
> BY THE COURT: Well does that put you in a conflict if you've got two clients with different presentation of a case?
>
> BY MR. FINLEY: No, sir.
>
> BY THE COURT: Will one not hurt the other?
>
> BY MR. FINLEY: It would be a conflict if they are tried together, but not - not otherwise.
>
> BY MR. CHANDLER: That's not-that's not a reason for the Court to grant a severance.
>
> BY THE COURT: Are the offenses antagonistic? Does the criminal record of one-

---

assumes without deciding that equitable tolling applies to § 2244(d).

BY MR. FINLEY: Judge, just a second. I filed a Motion Judge. Let's just look at the motion that I filed.

BY MR. GIBBONS: It was filed yesterday afternoon.

BY THE COURT: I hadn't seen the motion.

BY MR. FINLEY: She has - she has no criminal record. There were four things that we discovered in this, Your Honor, that we thought were applicable. She has no criminal record whatever [sic]. That's one of [the] considerations.

BY THE COURT: In terms of guilt or innocence, the criminal record of the defendant may not come out until the sentencing phase.

BY MR. FINLEY: Judge, I don't see how it couldn't when they are going to be raising his criminal record and his criminal past in connection with drugs. I don't think there's any question that they are going to mention that.

BY MR. GIBBONS: I don't see how we can get that in.

BY MR. CHANDLER: I hope we can, but-

BY MR. GIBBONS: Judge, I don't see -

BY THE COURT: There might be something in sentencing if it got to that stage where the - but normally guilt or innocence is when you're worried about the criminal record of one against someone who is not with a - with any kind of a record.

BY MR. FINLEY: Do you have the court file there?

BY THE COURT: No, sir.

BY MR. FINLEY: Do you have my motion?

BY THE COURT: No. I've got my notes on the response to the motion.

BY MR. FINLEY: Okay. Let me see if I can find my motion then.

BY MR. GIBBONS: There's no <u>Bruton</u> problem at all, the defenses aren't antagonistic at all. They are charged as

accomplices in two counts - principal and accomplice in two counts.

BY MR. CHANDLER: There's no allegation - there's no defendant statements. There's no allegations of one saying that one played a roll and the other didn't.

BY MR. GIBBONS: You can believe it's not antagonistic under that Garland County case.

BY MR. FINLEY: Well, Judge, they don't have to be antagonistic. There are several con- what is the rule number? Let's get it open here.

BY MR. CHANDLER: Twenty-two point three.

BY MR. FINLEY: Twenty-two point what?

BY MR. CHANDLER: Three. I guess it would be 22.3(b).

BY MR. GIBBONS: And, the offenses are absolutely and completely intertwined. You've got the same informant. You've got the same drugs. You've got the same money.

BY THE COURT: The same evidence of one?

BY MR. GIBBONS: Completely. I mean it's-

BY MR. FINLEY: Much of the evidence here, Your Honor, is going to be strictly against Mr. Cook and has nothing to do with Ms. Cook (sic). It's going to be difficult for the jury to keep in their mind separately the acts because there's going to be a heck of a lot of evidence. It's a trial that the State has already said is going to take a couple of days; and a very small part of this, if any, is going to relate to Ms. Burris.  I don't think they are going to be able to say that they've got an awful lot on her.

BY MR. GIBBONS: We've got two deliveries where she is just absolutely - every piece of evidence against Ms. Burris is against Cook and it's exactly the same evidence and the money that was from the aggravated robbery-

BY THE COURT: Are there any statements of either defendant to be offered by the State that implicates the other?

BY MR. FINLEY: No. What they've got- they don't have that, Your Honor; but they have a whole bunch of statements to be used against him and none against her.

BY MR. GIBBONS: But, nothing that implicates - there's no <u>Bruton</u> problem.

BY THE COURT: Well, that doesn't violate the rule.

BY MR. FINLEY: No, sir, but-

BY THE COURT: Or, it's not a factor to consider in severance.

BY MR. FlNLEY: Yes, sir, it is a factor to consider when the evidence - when it's difficult for the jury, you know, because of the evidence being presented against one and not evidence against the other and there's going to be a lot of evidence about these statements that he made.

BY THE COURT: Well, is there any evidence going to be presented against the defendant when the wife was not present?

BY MR. FINLEY: Yes, much; and they'll agree with that-

BY MR. GIBBONS: What?

BY MR. CHANDLER: I don't think there's a lot of evidence that involves him that doesn't involve her.  I mean they are charged as principals and accomplices.

BY MR. FINLEY: Well, they can be charged that way, but the evidence is not going to show that.

BY MR. CHANDLER: That's - that's why we're having a trial.

BY THE COURT: That's what trials are for. That's just like guilt or innocence. The State contends they are guilty and you contend they're innocent.

BY MR. FINLEY: Well, I understand that, Your Honor, and I understand that I can continue making this motion throughout the trial.

BY THE COURT: I'm going to deny your motion for severance based on at least what I've heard all day of facts about this case.

In his Rule 37 proceedings, specifically the appeal to the Arkansas Supreme Court, Petitioner argued an actual conflict existed in counsel's joint representation of him and Ms. Burris, and that it adversely affected counsel's performance under Strickland v. Washington, 466 U.S. 668, 688 (1984), and Cuyler v. Sullivan, 446 U.S. 335, 348 (1980).[7] Respondent's Exhibit C. The state court correctly noted Culyer requires a defendant to demonstrate an "actual conflict of interest adversely affected counsel's performance," but, as the court recognized, he does not have to "demonstrate prejudice in order to obtain relief." Cook v. State, 361 Ark. at 99. However, "the possibility of conflict is insufficient to impugn a criminal conviction." Id., quoting Cuyler.

In support of his claim, Petitioner contended that, during voir dire, counsel questioned each potential juror about his or her ability to distinguish between an accomplice, and related that Ms. Burris was charged as an accomplice, which created the inference that Petitioner was much more involved than she, and elevated his role in the charges; during trial, counsel devoted his efforts to

_____

[7] Petitioner raised an ineffective assistance of counsel claim based on conflict of interest on direct appeal, but the Arkansas Court of Appeals found he had not preserved the issue in the trial court and it could not be considered in that proceeding. Cook v. State, 76 Ark. App. at 454.

minimizing Ms. Burris' role; when counsel called Ms. Burris as a defense witness, she testified she had no knowledge of drug transactions, that she is opposed to drugs and that she and Petitioner had previously separated because of drugs, which counsel admitted at the Rule 37 hearing negatively impacted Petitioner and, had Petitioner been represented by separate counsel, that counsel would have not only objected to the testimony, but in all likelihood, would have been able to obtain a mistrial due to the highly inflammatory nature of the testimony. Respondent's Exhibit C, Argument at 14.

The Arkansas Supreme Court denied relief on the merits of the claim, finding Petitioner did not establish an actual conflict adversely affected counsel's performance because (1) counsel's statement to the jury during voir dire that Burris was not an accomplice did not change the fact that three of the five counts of the charges pertained solely to Petitioner and it appeared he played a bigger role in the offenses; (2) counsel's cross-examination of Alexander at length in an effort to diminish his credibility benefitted both defendants; (3) both defendants testified and Petitioner had an opportunity to rebut Burris' testimony about his prior drug use; (4) Petitioner's claim regarding counsel's closing argument was conclusory and did not entitle him to relief; (5) counsel's motion for a directed verdict only on Burris' behalf did not establish an actual conflict because

counsel testified at the Rule 37 hearing that, in his view, there was "plenty of proof" of Petitioner's guilt, and counsel was using his professional judgment in choosing not to make a frivolous motion and (6) Petitioner's argument that counsel's conflict also affected his performance during the penalty phase was unsupported by evidence and did not entitle him to relief.  <u>Cook v. State</u>, 361 Ark. at 98-101.


                            VI.

     Federal habeas relief may not be granted on any claim addressed on the merits by a state court, unless the petitioner can establish the state court's adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law ... or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §§ 2254(d)(1) and (2); <u>Williams v. Taylor</u>, 529 U.S. 362, 389 (2000).  The United States Supreme Court has recently reiterated that a habeas court may not grant relief, unless the error by a state court had a "substantial and injurious effect or influence in determining the jury's verdict" under <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993)(internal quotations omitted).  <u>Fry v. Piller</u>, 127 S.Ct. 2321, 2328 (2007).

          A "substantial and injurious effect" occurs when the
          court finds itself in "grave doubt" about the effect of

                            26

the error on the jury's verdict. <u>O'Neal v. McAninch</u>, 513
U.S. 432, 435 (1995). "Grave doubt" exists where the
issue of harmlessness is "so evenly balanced that [the
court] feels [itself] in virtual equipoise as to the
harmlessness of the error." <u>Id.</u>  With that said, under
<u>Fry</u>, we are not required to conduct a formal application
of both the Antiterrorism and Effective Death Penalty Act
of 1996 (AEDPA) and <u>Brecht</u> because the <u>Brecht</u> analysis
"obviously subsumes the [AEDPA test]." <u>Fry</u>, 127 S. Ct. at
2327.

<u>Toua Hong Chang v. State of Minnesota</u>, 521 F.3d 828, (8th Cir.),

<u>cert</u>. <u>denied</u>, 129 S.Ct. 314, 172 L.Ed.2d 228 (2008).

Finally, a state court decision involves "an unreasonable
determination of the facts in light of the evidence
presented in the state court proceedings" only if it is
shown that the state court's presumptively correct
factual findings are rebutted by "clear and convincing
evidence" and do not enjoy support in the record. 28
U.S.C. § 2254(d)(2), (e)(1); <u>see also</u> <u>Jones v. Luebbers</u>,
359 F.3d 1005, 1011 (8th Cir.2004), <u>cert</u>. <u>denied</u>, 543 U.S.
1027, 125 S.Ct. 670, 160 L.Ed.2d 507 (2004).

<u>Morales v. Ault</u>, 476 F.3d 545, 549 -550 (8th Cir. 2007).


VII.

In his petition here, Petitioner argues <u>Holloway v. Arkansas</u>,

435 U.S. 475 (1978), controls because counsel specifically advised

the court there would be a conflict if the two defendants were

tried together, and the court failed to investigate further, which

entitles him to a presumption of prejudice and automatic reversal.

Memorandum and Brief in Support of Petition For Writ of Habeas

Corpus by a Person in State Custody (DE # 3), p. 19-20.[8]  Petitioner

_____

[8] Petitioner mistakenly interchanges conflict and prejudice
at various points in his brief, but under the liberal construction

did not present this argument in his Rule 37 appeal to the Arkansas Supreme Court and he has offered no explanation for this default. Respondent has not raised procedural default as a defense, however, and the court finds there is no need to address the issue because, even if the claim were properly before the court, it does not entitle Petitioner to relief.

In Holloway, counsel requested the trial court to appoint separate counsel for three co-defendants and the court refused. On direct appeal to the United States Supreme Court,

> the Holloway Court deferred to the judgment of counsel regarding the existence of a disabling conflict, recognizing that a defense attorney is in the best position to determine when a conflict exists, that he has an ethical obligation to advise the court of any problem, and that his declarations to the court are "virtually made under oath." Id., at 485-486, 98 S.Ct. 1173 (internal quotation marks omitted). Holloway presumed, moreover, that the conflict, "which [the defendant] and his counsel tried to avoid by timely objections to the joint representation," id., at 490, 98 S.Ct. 1173, undermined the adversarial process. The presumption was justified because joint representation of conflicting interests is inherently suspect, and because counsel's conflicting obligations to multiple defendants "effectively sea[l] his lips on crucial matters" and make it difficult to measure the precise harm arising from counsel's errors. Id., at 489-490, 98 S.Ct. 1173. Holloway thus creates an automatic reversal rule only where defense counsel is forced to represent codefendants over his timely objection, unless the trial court has determined that there is no conflict. Id., at 488, 98 S.Ct. 1173 ("[W]henever a trial court improperly requires joint representation over timely objection reversal is automatic").

---

required of pro se pleadings, the court accepts his argument to be that Holloway's holding, as it is generally understood, applies to his case.

<u>Mickens v. Taylor</u>, 535 U.S. 162, 167-168 (2002).

First, I find counsel did not sufficiently raise a <u>Holloway</u> claim in state court.  The only context in which the conflict issue arose was a motion to sever.  Counsel never requested separate counsel, even when the motion to sever was denied.  Further, Petitioner is simply incorrect in his assertion that the court did not inquire about a possible conflict.  The excerpt quoted above shows the trial court asked counsel if the defenses were antagonistic and if there were any cross-implicating statements. In fact, most of defense counsel's argument in favor of severance was that Ms. Burris did not have a criminal record and the greater part of the evidence was against Petitioner and not Ms. Burris, including statements Petitioner had made.  Thus, I find Petitioner is not entitled to relief under <u>Holloway</u>.  I further find that, given the record in this case, and the standard this court is required to apply, it was not unreasonable for the Arkansas Supreme Court to find Petitioner did not establish a conflict of interest under <u>Cuyler</u>, or an adverse impact on the defense.  Petitioner is not entitled to relief on ground one.


VIII.

In ground two, Petitioner contends counsel was ineffective in failing to impeach Alexander's testimony with a tape recording on which Alexander stated Petitioner did not sell him drugs, kidnap or

rob him, and that counsel failed to interview or call three defense witnesses (Freddie Petty, Duey Pace and Brian Embry), who were present during the incident on July 12, 1999, when Petitioner discovered the recording device on Alexander.  For Sixth Amendment ineffective assistance of counsel claims not involving a possible conflict of interest, it has long been established that, in order to prevail, a petitioner must show his attorney's performance was constitutionally deficient and there is a reasonable probability that the outcome would have been different but for the deficiency. Strickland v. Washington, 466 U.S. at 687-88, 694.  "Counsel's performance was deficient if it fell 'outside the wide range of professionally competent assistance.'" Sherron v. Norris, 69 F.3d 285, 290 (8th Cir. 1995) (quoting Strickland, 466 U.S. at 690). Counsel is presumed competent and reasonable trial strategy cannot rise to the level of ineffective assistance of counsel.  Lockhart v. Fretwell, 506 U.S. 364 (1993).  A reviewing court generally must "assess counsel's overall performance throughout the case in order to determine whether the 'identified acts or omissions' overcome the presumption that a counsel rendered reasonable professional assistance." Kimmelman v. Morrison, 477 U.S. 365, 386 (1986).

Petitioner raised this issue in his Rule 37 appeal, where the Arkansas Supreme Court found:

> In denying relief, the trial court found that appellant failed to indicate what evidence was on these recorded tapes that could have been used to impeach. According to the court, Alexander was cross-examined by counsel and

> also called as a defense witness. Moreover, the trial
> court noted that counsel testified at the hearing that he
> "knew Mr. Alexander had told a lot of lies and that he
> did not have a deal with the State."
>
> We have held that the manner of questioning a witness is
> a very subjective issue about which different attorneys
> could have many different approaches. <u>Nelson v. State</u>,
> 344 Ark. 407, 414, 39 S.W.3d 791, 796 (2001). Even if
> counsel's decision proves unwise, matters of trial
> tactics and strategy are not grounds for postconviction
> relief. <u>Id.</u> Moreover, it is the sole province of the
> jury to determine not merely the credibility of a
> witness, but the weight and value of his or her
> testimony. <u>Id.</u> In the instant case, there is no evidence
> that the jury would have resolved the credibility
> determination in appellant's favor such that it would
> have affected the outcome of his trial. We therefore
> affirm the denial of relief.

<u>Cook v. State</u>, 361 Ark. at 104-105.  In addition, this court notes

the conversations on the tapes Petitioner contends should have been

used to cross-examine Alexander were between Petitioner and

Alexander, and could have caused the jury to draw negative

conclusions about Petitioner's motivation for the conversations.

At the very least, the statements would have deserved very little

weight given the circumstances.  Memorandum Brief in Support of

Petitioner for Writ of Habeas Corpus by a Person in State Custody

(DE # 3), p. 12.  I find it was not unreasonable for the state

court to deny relief on this claim.

As for the failure to interview Petty, Pace and Embry, the

court found:

> In denying relief, the trial court found that counsel was
> aware of the four witnesses whose names were furnished by
> appellant and who were at appellant's house on the date
> of the offense. The court noted counsel's testimony that

31

he did not subpoena the witnesses because the State had them subpoenaed. According to the trial court, these witnesses had felony convictions or charges pending. The trial court ruled that appellant failed to show how he was prejudiced by counsel's failure to interview the witnesses or what testimony they could have given that could have changed the outcome of the trial.

According to appellant, Freddie Petty, Dewey Pace, and Bryan Embry were all present at his residence during the time that Alexander was there. Appellant claims that these individuals would have contradicted Alexander's testimony regarding the drug transaction. Moreover, appellant claims that David Kidd could have testified concerning the suppression of evidence seized from appellant's van.

At the Rule 37 hearing, counsel testified that he did not subpoena these witnesses because he was "afraid" of them. According to counsel, the problem with Embry and possibly some of the others, was that they already had convictions that were related to methamphetamine. Counsel testified that it is a "balancing act" determining which witness would be best to call. He also testified that he did interview Petty and that Petty never told him that there was no methamphetamine lab. Counsel testified that none of the witnesses could have told him that a methamphetamine lab did not exist; all they could testify to was that they did not see any equipment that was used in the manufacture of methamphetamine. Counsel testified that he did not believe that any of these individuals were present during the "critical time" on the date in question. Moreover, according to counsel, although three of the witnesses denied that a drug transaction occurred between appellant and Alexander, these witnesses were only stating that they did not see a transaction.

Cook v. State, 361 Ark. at 105-106.  I do not find the trial court's denial of relief unreasonable.  Petitioner is not entitled to relief on ground two.

IX.

32

The court will consider grounds three and four together.   In ground three, Petitioner contends trial counsel was ineffective in that he failed to investigate and discover evidence that at least one of the prior convictions used to impeach Petitioner during the trial and enhance his sentence had been pardoned, and in ground four he contends the prosecution failed to disclose and knowingly withheld evidence of the pardon.   The Arkansas Court of Appeals addressed the question of the pardon on direct appeal and found Petitioner was not prejudiced by the admission of the pardoned offense.

> The State also argues that the admission of the pardoned offense did not prejudice Cook because he was sentenced to less than the potential maximum sentence, and because he was not charged as an habitual offender. The admission of the prior offense did not change the range of available sentences, nor did Cook receive the maximum sentence available to the jury.

Cook v. State, 76 Ark.App. at 455.

In his Rule 37 appeal, the Arkansas Supreme Court found that, since Petitioner could show no prejudice, he could not prevail on an ineffective assistance of counsel claim.   It also considered Petitioner's claim under Brady v. Maryland, 373 U.S. 83 (1963), and found that, since Brady also required a showing of prejudice, he could not prevail on that claim.   Given the state courts' interpretation of its own sentencing laws, I do not find their denial of relief was unreasonable.   Petitioner is not entitled to relief on grounds three and four.

33

IT IS THEREFORE ORDERED that this petition be, and it is hereby, dismissed with prejudice.  The relief prayed for is denied.

SO ORDERED this 17th day of March, 2009.

_____
United States Magistrate Judge